**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
SALVADOR SANCHEZ, CELSO TORRES,
IDELFONSO GIL RODRIGUEZ,
WANDY RAMIREZ, DAVID TORRES
and JHON VINAS *on behalf of themselves*
*and all others similarly situated,*

                                                                        20-cv-05623 (SN)

                       Plaintiffs,

          -against-


ART+1, Inc. and ARTAN MAKSUTI,
Individually,

                       Defendants.
-------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
### SETTLEMENT

Jacob Aronauer
The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York York, New York 10007
(212) 323-6980

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.      PRELIMINARY STATEMENT ............................................. 1

II.     FACTUAL BACKGROUND .................................................. 2

III.    SETTLEMENT NEGOTIATIONS ......................................... 3

IV.     PROPOSED SETTLEMENT TERMS .................................... 5

        A.      Net Settlement Fund and Allocation Formula ........................ 7

        B.      Service Awards .................................................... 8

        C.      Attorneys' Fees and Litigation Costs ............................ 10

        D.      Releases ......................................................... 10

        E.      Settlement Claims Administrator .................................. 10

V.      CLASS ACTION SETTLEMENT PROCEDURE ....................... 11

VI.     LEGAL STANDARDS ..................................................... 11

        A.      Rule 23 .......................................................... 11

        B.      FLSA ............................................................. 12

VII.    ARGUMENT ............................................................. 13

        A.      Certification of a Settlement Class Under Rule 23 is Appropriate ...... 13

        B.      Preliminary Approval of the Settlement is Appropriate ............... 17

                1.      The Settlement is Fair, Reasonable, and Adequate.................. 20

                        a.      Further Litigation Would Be Complex, Costly, and Long
                                (*Grinnell* Factor 1) ...................................... 20

                        b.      The Reaction of the Class Has Been Positive
                                (*Grinnell* Factor 2) ...................................... 21

                        c.      Discovery Has Advanced Far Enough to Allow the Parties
                                to Resolve the Case Responsibly (*Grinnell* Factor 3).......... 21

d.      Plaintiff Would Face Real Risks if the Case Proceeded
        (*Grinnell* Factors 4 & 5) .............................................................. 22

e.      Establishing a Class and Maintaining It Through Trial
        Would Not Be Simple (*Grinnell* Factor 6) .................................. 23

f.      Defendants' Ability to Withstand a Greater Judgment
        is at Issue (*Grinnell* Factor 7) ....................................................... 23

g.      The Settlement Fund Is Substantial, Even in Light of the
        Best Possible Recovery and the Attendant Risks of Litigation
        (*Grinnell* Factors 8 and 9) ............................................................. 24

2.      The Proposed Notices Are Appropriate ..................................................... 25

VIII.   A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED .................................. 26

IX.     CONCLUSION ............................................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods.. Inc. v. Windsor*, 512 U.S. 591 (1997) ................................................. 13

*Beckman v. KeyBank, N.A*., 293 F.R.D. 467 (S.D.N.Y. 2013) ............................................... 12-13

*Briceno v. USI Servs. Group, Inc.*, 2015 U.S. Dist. LEXIS 132185
    (2d Cir. Sept. 29, 2015) .......................................................................................... 16

*Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176 (W.D.N.Y.2007) ............................................... 16-17

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010) ................................................................... 15

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ...................................... 13

*Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ................................... 17

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................ passim

*City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. Lexis 64517
    (S.D.N.Y. May 9, 2014) ............................................................................................ 18

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...................................................... 12, 20

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) .......................................... 15, 16

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .................................................. 13

*Dover v. British Airways, PLC*, 2018 U.S. Dist. LEXIS 92496 (E.D.N.Y. May 29, 2018) ......... 18

*Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. (S.D.N.Y. June 18, 2008) ................................ 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................................... 14

*Elisa W. City of New York*, 2016 U.S. Dist. LEXIS 107094 (S.D.N.Y. Aug. 12, 2016) ............. 20

*Eng–Hatcher v. Sprint Nextel Corp.*, No. 07 Civ 7350, 2009 WL 7311383
    (S.D.N.Y. Nov.13, 2009) .......................................................................................... 14

*Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290
    (E.D.N.Y. 2015) ..................................................................................................... 17

*Frank v. Eastman Kodak Co*., 228 F.R.D. 174 (W.D.N.Y. 2005) ............................... 9, 18, 24, 25

*Fraticelli v. MSG Holdings L.P.,* 2018 U.S. Dist. LEXIS 110271
    (S.D.N.Y. July 2, 2018) ............................................................................................ 13

*Gomez v. Lace Entm't, Inc.*, 2017 U.S. Dist. LEXIS 5770 (S.D.N.Y. Jan. 6, 2017) .................... 14

*Guzman v. VLM, Inc*., No. 07-CV-1126, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008) ................ 16

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011) ............................ 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) .................................................... 17

*Hayes v. Harmony Gold Mining Co., Ltd.*, 509 Fed.Appx. 21 (2d Cir. 2013) ........................... 12

*Henry v. Little Mint, Inc.*, No. 12 CIV 3996 CM, 2014 WL 2199427
    (S.D.N.Y. May 23, 2014) ................................................................... 11, 13, 18, 19

*Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y.2007) ................................ 16

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164
   (S.D.N.Y. 2000) ...................................................................................... 20, 22, 24

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ...................................... 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ......................................... 19

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ............................ 26

*In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132 (2d Cir. 1998)........................................ 11

*In Re Petrobras Sec. Litig.*, 862 F.3d 250 (2d Cir. 2017)............................................................ 15

*In re Traffic Executive Ass'n*, 627 F.2d 631 (2d Cir. 1980)........................................................ 18

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).................................... 17, 22

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ............................................................... 12, 25

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)............................... 18

*Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179 (D. Kan. 2002) ................................ 18

*Massiah v. MetroPlus Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 166383.................................. 19

*Maywalt v.Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998) .............................. 17

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)..................................................................... 25

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
   2016 U.S. Dist. LEXIS 153804 (S.D.N.Y Nov. 4, 2016) ........................................ 15

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)............................................................................ 24

*Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*,
   986 F.Supp.2d 207 (E.D.N.Y. 2013).......................................................................... 12

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ........................................................ 18

*Quow v. Accurate Mech. Inc.*, 2018 U.S. Dist. LEXIS 114524 (S.D.N.Y. July 10, 2018) ........... 9

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ......................................................................... 13

*Reyes v. City of Rye*, 2016 U.S. Dist. LEXIS 9942 (S.D.N.Y. July 28, 2016) ........................... 14

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008) ...................................................................................... 14

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980)............................................... 14

*Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438
   (S.D.N.Y. May 1, 2014)............................................................................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................ 11, 17, 18

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102,
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).............................................................. 9

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 18

**Statutes**

Fair Labor Standards Act ............................................................................ *passim*

New York Labor Law .................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ....................................................................................... *passim*

Fed. R. Civ. P. 54 ............................................................................................. 10

**Secondary Sources**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)......... 11, 17, 18, 20

*Manual for Complex Litigation, Fourth* (2011).......................................................... 26

*Manual for Complex Litigation, Third* (1995) ...................................................... 11-12

## I.      PRELIMINARY STATEMENT

Plaintiffs Salvador Sanchez Garcia ("Sanchez"), Celso Torres ("S. Torres"), Idelfonso Gil Rodriguez ("Gil), Wandy Ramirez ("Ramirez"), David Torres Romero ("Torres"), Jhon Vinas Aguvel ("Vinas"), (collectively, the "Named Plaintiffs") and Alfonso Enrique Mora Huerta ("Mora"), Andres Phillip Escobar Sanchez ("Escobar"), Antonio Salazar ("Salazar") and Wilson Romero ("Romero") (collectively, the "Opt-in Plaintiffs") individually and on behalf of all other similarly situated individuals, by and through their undersigned attorneys and with the consent, for settlement purposes only, of Defendants Art+1, Inc. ("Art+1" or the "Corporate Defendant") and Artan Maksuti (the "Individual Defendant"), individually (collectively "Defendants"), submit this Memorandum of Law in Support of their Consent Motion to Approve Settlement Agreement, Certify Settlement Class, Authorize Class Notice and Schedule a Fairness Hearing.

The Settlement Agreement executed by the parties is attached to the declaration of Jacob Aronauer ("Aronauer Decl.") as Exhibit A.  As set forth in detail below, Plaintiffs respectfully request that the Court review and approve the terms of the proposed settlement of this action both as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and also as a class action under Fed. R. Civ. P. 23 for Plaintiffs' claims under the New York Labor Law ("NYLL"), §§ 190 *et seq*.

Plaintiffs also ask the Court to approve the proposed apportionment of the settlement proceeds, after conducting a hearing about the fairness, reasonableness, and adequacy of the proposed settlement.  Attached as Exhibit B to the Aronauer Decl., Plaintiffs submit a proposed notice of the settlement to be mailed or delivered to each potential class member, informing them of the terms of the Settlement Agreement, advising them of their rights under the proposed settlement, and giving them an opportunity to be heard in the proceedings for the final approval of the settlement.

## II.     FACTUAL BACKGROUND

This is a lawsuit brought under the FLSA and the NYLL to recover unpaid overtime wages and recover damages for violation of the notice and recordkeeping provisions of NYLL § 195. Plaintiffs filed their Complaint on July 21, 2020 as a collective action under Section 16(b) of the FLSA and also as a traditional class action under Rule 23, Fed. R. Civ. P. for alleged violations of the NYLL.

Plaintiffs and members of the class are alleged to be current or former employees ("Construction Workers") of Defendants who performed construction work between September 22, 2014 through the date of the Preliminary Approval Order.  Plaintiffs allege that they and the class were responsible for, *inter alia*, hauling materials, carpentry, painting, site clearance, constructing building frameworks, installing structures, and other duties typically associated with those of construction laborers in the commercial construction industry.

Construction Workers also allege they and the class regularly worked in excess of 40 hours per week and did not receive full time and a half pay for their overtime hours.  Instead, Construction Workers allege that they and other employees were paid the same hourly rate for work performed after 40 hours ("Straight Time") or, in the alternative, a daily or weekly rate that was not inclusive of overtime.  Finally, Construction Workers allege that they and the class did not receive legally sufficient notice or wage statements as required under NYLL § 195.

In contrast, Defendants assert that Construction Workers lacked standing to bring claim against the Defendants, that Construction Workers failed to state a cause of action, that such pleadings are barred by the doctrine of laches, that such pleadings are barred by the statute of limitations, that pleadings failed to state a basis for a class or Collective Action, that pleadings lacked sufficient evidence to corroborate those pleadings, that any acts or omissions on behalf of Defendants were in good faith, that recovery must be limited to Defendants' liability, that

Defendants are entitled to a set-off with respect to monies, and that Plaintiffs are barred from bringing the pleadings based on the doctrine of unclean hands.  Therefore, Defendants assert that if they prevailed on any of these issues, the Construction Workers would not be entitled to any damages under the FLSA or the New York Labor Law.

## III.    SETTLEMENT NEGOTIATIONS

The proposed Settlement Agreement in this case is the product of extensive, arms-length settlement negotiations.  On September 28, 2021 the parties had a settlement conference before the Honorable Sarah Netburn.  While the parties did not settle at the settlement conference, they made significant progress and bridged the proverbial gap.  On November 18, 2021, the parties reached a settlement in principle.

To obtain a fair settlement, the parties exchanged relevant records pertaining to wages earned and hours worked by putative class members as well as financial information about the corporate defendant.  In addition, the parties communicated with each other on numerous occasions by electronic mail and telephone.  At the time the settlement was completed, sufficient and significant discovery had been conducted, including the production of documents by Defendants, numerous depositions, and damages calculations from Plaintiffs.  Through the willingness of Defendants to provide relevant information, the size of the class as well as the potential exposure had been sharply defined.

From Plaintiffs' point of view, the settlement is based on four factors.  First, the vast majority of Plaintiffs and the putative Class Members were paid at Straight Time for all work performed after 40 hours.  The total damages for hours worked after 40 per week for all Class Members was estimated by Plaintiffs' counsel to be $3,830,252.65 including full liquidated damages assessed at 100%.  Defendants' counsel disputes this amount and maintains that the total damages for partially unpaid overtime was substantially less.  Second, another portion of the

damages was based on statutory damages.  Specifically, the notice damages are approximately $1,232,500.00.  We believe that Defendants failed to provide all Class Members with the wage hire notice NYLL 195(1) upon hire and proper wage statements under 195(3).

Third, the reality is that we are still dealing with the financial repercussions from Covid-19.  The vast majority of businesses in the New York City area have been negatively impacted by the pandemic, including the construction industry.  As a result, Plaintiffs' counsel took a relatively cautious approach with respect to negotiations (Art+1 is a small individually-owned construction company that has been incorporated less than ten years).  Fourth, Plaintiffs were able to obtain a resolution of this matter relatively efficiently, as counsel for the parties worked cooperatively with each other in the best interest of their clients.  There is monetary value in not having to spend additional hours on the completion of depositions and motion practice involving summary judgment and/or class certification.  For settlement purposes only, there does not appear to be significant factual disputes as to the construction workers' hours worked or pay rate.

Accordingly, the parties have agreed to settle this matter for $499,999.86.  This settlement includes a reverter of only $2,500.00 back to Defendants of any unclaimed funds.  If the amount of unclaimed funds is greater than $2,500 and less than $50,000 then those monies will revert back to the Named Plaintiffs and Opt-In Plaintiffs, while amounts in excess of $50,000, if unclaimed, will revert back to the Class Members.  After reaching a settlement in principle, the parties have spent substantial time finalizing the settlement.  This includes, but is not limited to, the following: refining the damages' allocation formula; exchanging and revising the proposed settlement agreement, notice to Class Members and this memorandum of law; the declarations of Plaintiffs' counsel Jacob Aronauer and Vincent Bauer; and working with the class administrator on class

administration issues.  The settlement negotiations were conducted in good faith and resulted in the proposed settlement terms set forth herein.

## IV.    PROPOSED SETTLEMENT TERMS

The proposed Settlement Agreement provides that Defendants will make a total Settlement Payment of $499,999.86, consisting of eighteen (18) consecutive equal monthly payments of $27,777.77 that Defendants will pay directly to the Claims Administrator in complete settlement of this action, which shall include all Individual Settlement Payments, Service Awards, Claims Administrator Costs and Fees, Class Counsel Attorneys' Fees and Costs, the Employer's share of payroll deductions for W-2 related taxes for each Named Plaintiffs, Opt-In Plaintiffs, and Class Members, as well as Named Plaintiffs, Opt-in Plaintiffs and Class Members' respective  individual required W-2 taxes and any other fees or costs associated with the Settlement Agreement ("Settlement Related Payments").  The proposed settlement amount is a fair, adequate, and reasonable resolution of this claim, given the anticipated costs and delays of continued litigation and motion practice.  It is well within the range of potential outcomes for the Construction Workers, given the potential proof problems in the case and inability for Defendants to withstand a larger judgment.  The Parties have agreed that while the Defendants will begin to deposit the Settlement Amount within 30 days after Court final approval to the Claims Administrator, Settlement payment to the Construction Workers and Class Counsel shall be made in two installments, the first within 30 days of the ninth (9th) deposit by Defendants with the Claims Administrator, and the second within 30 days of the eighteenth (18th) deposit by Defendants with the Claims Administrator

For further clarification, within 30 days after the ninth and eighteenth payment, the Claims Administrator will mail half of the total accrued Settlement Amount payments in individual settlement checks to the Class Members, half of any approved Service Awards and half of

approved fees to Class Counsel.  Salvador Sanchez Garcia and Celso Torres will each receive $7,500.00 as a service award; Idelfonso Gil Rodriguez, Wandy Ramirez, David Torres Romero and Jhon Vinas will receive $5,000.00 as a service award; and Opt-ins Alfonso Enrique Mora Huerta, Andres Phillip Escobar Sanchez, Antonio Salazar and Wilson Romero will each receive $3,750.00 as a service award.  Admittedly, this payment process is, for a lack of a better term, different.  However, due to the cost of the administrator fees in processing payments, we thought that this was the best possible method in ensuring that the Class obtains the largest amount of money as possible with relatively minimal delays.

To ensure that Defendants make all payments, Defendants (both individually and the corporate defendant) have signed an affidavit of confession of judgment for 1.25 times the amount owed in the event of non-payment, totaling 1.25 multiplied by (Settlement Amount minus payments made by Defendants), for a total of no more than $625,000.00 if no payments were made towards the settlement.  The parties have further agreed that if Defendants fail to make any payment as set forth, Class Counsel shall transmit, by email, a notice to cure Defendants' Counsel, Linda Kagan (lkagan@thekaganlawgroup.com).  Defendants shall have the opportunity to cure 30 calendar days from receipt of the same.  If Defendants fail to make the outstanding payment during the 30 day grace period, Defendants shall be in default of the Settlement Agreement and upon such default, Class Counsel may immediately file the Confession of Judgment with the appropriate County Clerk in New York State and the clerk of the Court for the U.S. District Court for the Southern District of New York.  In the event that Defendants do not make the required payment, after a reasonable cure period, Plaintiffs' counsel would also be entitled to reasonable attorneys' fees with respect to the enforcement of the settlement agreement.  We believe that both the affidavit

of confession judgment and the attorneys' fees provision as well as the 30-day grace period for non-payment will ensure that the settlement funds are distributed.

### A.     Net Settlement Fund and Allocation Formula

The parties have agreed that the Construction Workers may petition the Court for an award from the Settlement Fund for attorneys' fees and costs.  The parties have also agreed that the Claims Administrator will be paid $20,500.00 out of the Settlement Fund, and (pending approval from the Court), the Named Plaintiffs and Opt-In Plaintiffs will receive service awards totaling $100,000.00.  After these amounts have been deducted, the remaining funds (the "Net Settlement Amount") will be allocated among the Construction Workers.  Construction Workers who do not opt out of the settlement and are identified by the class administrator will be paid pursuant to the amount of time they worked on behalf of Defendants prior to January 1, 2020.  For settlement purposes only, the parties are in agreement that beginning on or about January 1, 2020, Defendants began to pay the Class Members in compliance with the overtime regulations.  Thus, any Construction Workers who began employment on January 1, 2020 or after will only be eligible for a $100.00 reward.

*Allocation Formula.*  After multiple discussions by the parties, and further investigation and analysis by proposed Class Counsel, the parties arrived at a proposed allocation formula that takes into account the length of time the respective employee worked for Defendants.  As the Court knows, it is typical in common fund overtime class action settlements for settlement shares to be apportioned based on amount of overtime hours worked and/or the length of time (i.e., years) worked.

The individual settlement payments to each Class Member shall be paid from the Settlement Fund, out of the Net Settlement Amount of $207,998.75.  Each Class Member shall be paid based on number of years they worked for Defendants before January 1, 2020: each Class

Members' number of years worked shall be divided by the total number of years worked by all Class Members, and that percentage shall be applied to the Net Settlement Amount.  Each Class Member who started working for Defendants after January 1, 2020 shall receive $100.  A table listing the settlement payout for each Class Member is annexed to the Settlement Agreement as Exhibit B.

The proposed apportionment of the settlement provides for attorneys' fees of 33.33% percent of the gross amount of the settlement amount after attorneys' expenses, or a total of $171,501.11 (including attorneys' fees and expenses).  Plaintiffs' counsel subtracted $7,251.72 (the costs of the expenses in this matter) from the total settlement and then allocated 33.33% of the settlement monies to Plaintiffs' counsel to calculate the total fees and expenses.  Of the attorneys' fees and expenses, The Law Offices of Jacob Aronauer will receive $100,873.87 (57% of the attorneys' fees, plus the $7,251.72 in expenses) and The Law Offices of Vincent Bauer will receive $70,627.24 (43% of the attorneys' fees).

Class Members will have 120 days from the date of mailing to endorse and cash their Settlement Checks.  Any additional Class Members identified within this 120-day void period will be mailed a check 30 days after the 120-day void period, and will have 60 days after mailing to cash the check.  All unclaimed remaining funds will be returned to Defendants.  The Claims Administrator will be responsible for exercising due diligence in locating putative Class Members based on information provided by the Defendants.

### B.    Service Award

The proposed Settlement also provides for the payment of a service award of $15,000.00 to Plaintiffs Salvador Sanchez Garcia and Celso Torres, and $10,000.00 to each of the remaining four Named Plaintiffs.  Finally, the proposed settlement also provides for a service award of $7,500.00 to each of the four Opt-In Plaintiffs.  It is common in class and collective cases for

service or incentive payments to be made to named plaintiffs or class representatives in addition to their proportionate share of the recovery. Such payments compensate plaintiffs for the additional efforts and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action. Service or incentive payments are "particularly appropriate" in employment litigation, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Quow v. Accurate Mech. Inc.*, 2018 U.S. Dist. LEXIS 114524, at *12 (S.D.N.Y. July 10, 2018) *citing Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Courts in this District have approved reasonable incentive payments in FLSA collective and wage and hour actions. *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (Judge Reyes granting a $30,000 service award).

Sanchez and Torres were instrumental in providing the backbone information necessary to commence the case and, in addition, in obtaining additional Plaintiffs to join the case (and therefore strengthening the overall case with the additional Plaintiffs' information). Overall, all of the Named Plaintiffs have devoted a substantial amount of time to this case, including taking time off from their jobs to meet at counsels' office and speaking to other current and former proposed Construction Workers to confirm their understanding of certain facts about Defendants' operations. The Named Plaintiffs also responded to many telephone inquiries and Facetime sessions from counsel about the documents Defendants produced in support of their defenses. The Named Plaintiffs also attended a settlement conference. In short, we would not have obtained a half million settlement without the Named Plaintiffs' efforts.

### C.      Attorneys' Fees and Litigation Costs

Consistent with the Settlement Agreement, Plaintiffs' counsel will apply for reimbursement from the Settlement Amount for their fees and costs and disbursements for no more than 1/3 of the Settlement Amount after the deduction of expenses.` However, at this juncture the Court need not rule on fees and costs.  Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), proposed Class Counsel will file a motion for approval of attorneys' fees and reimbursement of expenses with its motion for final approval of the settlement, if and when, preliminary approval is granted.

### D.      Wage and Hour Releases

The Settlement Agreement provides that all Rule 23 Class Members release the Defendants from all wage and hour claims arising under the New York Labor Law pursuant to their purported employment with Defendants.  Additionally, all Class Members with claims that fall within the FLSA statute of limitations will release their FLSA claims against Defendants by virtue of cashing a settlement check.

### E.      Settlement Claims Administrator

Under the Settlement Agreement, the Parties will retain the services of a Settlement Claims Administrator jointly selected by counsel for all parties.  The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, translating the notices from English to Spanish, distributing the Service Award, distributing any attorneys' fees and costs awarded by the Court to Class Counsel, calculating the Settlement Checks in accordance with the Court's Final Approval Order, administering the claims administration process, distributing the Settlement Checks to Class Members, filing any required reports with the Court and locating Class Members whose mailings are returned or undeliverable, if possible.  The Settlement Claims Administrator will also receive

opt-outs and objections and will timely forward the same to the parties upon receipt by the Administrator.  The Settlement Administrator's fees are paid out of the Net Settlement Fund.

## V.    CLASS ACTION SETTLEMENT PROCEDURE

The procedure for approval of a class action settlement with FLSA and NYLL wage and hour claims includes three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement class;

2.  Dissemination of mailed and/or published notice of settlement to all affected Class Members; and;

3.  A final settlement approval hearing at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Henry v. Little Mint, Inc*., No. 12 CIV. 3996 CM, 2014 WL 2199427, at *5 (S.D.N.Y. May 23, 2014) (*citing* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 11.22 *et seq.* (4th ed. 2002).

## VI.    LEGAL STANDARDS

### A.    Rule 23

Rule 23(e) provides that "a class action shall not be dismissed without approval of the court." Fed. R. Civ. P. 23(e).  There is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 138 (2d Cir. 1998).  A court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (*citing Manual for Complex*

*Litigation, Third,* § 30.42 (1995)).  In evaluating the merits of a proposed class action settlement, the Court must ensure that the settlement is both procedurally and substantively fair.  *Hayes v. Harmony Gold Mining Co., Ltd*., 509 Fed. Appx. 21, 22 (2d Cir. 2013).  A court determines a settlement's fairness by looking at both the settlement's terms (substantive fairness) and the negotiating process leading to settlement (procedural fairness).  *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

In determining whether a settlement agreement is substantively fair, courts in the Second Circuit consider the factors enumerated in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974).  The *Grinnell* factors include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.

In determining whether a settlement is procedurally fair, courts scrutinize the negotiation process "in light of the experience of counsel, the vigor with which the case was prosecuted and the coercion or collusion that may have marred the negotiations themselves."  *Payment Card Interchange Fee & Merch. Discount Antitrust Litig*., 986 F.Supp.2d 207, 221 (E.D.N.Y. 2013).

### B.      FLSA

Courts are mindful of the fact that "FLSA collective actions do not implicate the same due process concerns as Rule 23 actions."  *Viafara v. MCIZ Corp*., No. 12 Civ. 7452, 2014 WL 1777438, at *8 (S.D.N.Y. May 1, 2014).  Therefore, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes."  *Beckman v.*

*KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).  Nevertheless, judicial approval of FLSA settlements is required.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).  Because the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, however, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement."  *Henry*, 2014 WL 2199427 at *7 (internal citation and quotation marks omitted).  Accordingly, for all intents and purposes, this settlement is styled as a Rule 23 class action settlement but takes into account and releases Defendants from any and all FLSA claims.

## VII.   ARGUMENT

### A.   Certification of a Voluntary Settlement Class Under Rule 23 Is Appropriate

Rule 23 of the Federal Rules of Civil Procedure governs traditional class actions, or what are referred to as "opt-out" class actions.  The United States Supreme Court has noted that the drafters of Rule 23 intended class actions to be available to address situations where a group of people seek to vindicate the rights of injured persons who otherwise would be without sufficient strength or inclination to bring the alleged wrong-doer into court on an individual basis.  *Amchem Prods. Inc. v. Windsor*, 512 U.S. 591 (1997).  Before granting final approval of a class action settlement, courts must consider whether the proposed settlement class satisfies the requirements enumerated in Fed. R. Civ. P. 23.  *See Fraticelli v. MSG Holdings L.P.,* 2018 U.S. Dist. LEXIS 110271, at *7 (S.D.N.Y. July 2, 2018) citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006)  ("Before reaching the merits of the proposed settlement, the Court must ensure that the settlement class is certifiable.").

Courts have broad discretion in deciding whether or not to certify a class action under Rule 23. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).  In evaluating the appropriateness of a case for class certification, the Court should not consider the factual merits of the case or the

strengths or weaknesses of the underlying claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 158 (1974). Once a court is satisfied that the requirements of Rule 23 are met, class certification is a matter of right. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 403 (1980). To obtain class certification under Rule 23, Plaintiff must prove the four threshold requirements of Rule 23(a): numerosity, commonality, typicality and adequacy. *Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc*., 546 F.3d 196, 201-02 (2d Cir. 2008). Here, Plaintiffs can establish all of the prerequisites for class certification under Rule 23.

Numerosity is presumed where a court can reasonably infer that the class contains 40 members or more. *Reyes v. City of Rye*, 2016 U.S. Dist. LEXIS 99429, at *12 (S.D.N.Y. July 28, 2016). As Defendants provided Plaintiffs with a list of approximately 100 construction workers who worked for them from September 22, 2014 through September 22, 2020 (the "Class Period"), the numerosity requirement is satisfied. The commonality and typicality factors require Plaintiff(s) to show "questions of law or fact common to the class," and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2) and (3). Plaintiffs typically must produce "some quantum of evidence to satisfy the commonality and typicality requirements..." *Gomez v. Lace Entm't, Inc.*, 2017 U.S. Dist. LEXIS 5770 at *15-16 (S.D.N.Y. Jan. 6, 2017) *citing Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383, at *6 (S.D.N.Y. Nov. 13, 2009).

The Named Plaintiffs have alleged, and the evidence adduced during discovery shows, that they and the proposed Class have set forth specific facts alleging overtime violations that give rise to wage claims under the FLSA and NYLL. Given the relatively straightforward nature of the overtime claims as well as the notice violations, the Named Plaintiffs and the proposed Class can safely establish commonality and typicality. Finally, to satisfy the adequacy requirement,

Plaintiffs must show that their interests are not antagonistic to those of the class, and the same strategies that will vindicate his claims also apply to the class. *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 2016 U.S. Dist. LEXIS 153804, at *15 (S.D.N.Y Nov. 4, 2016); *see also Damassia v. Duane Reade, Inc*., 250 F.R.D. 152, 158 (S.D.N.Y. 2008).  The Named Plaintiffs' interests and concerns are not antagonistic to those of prospective Class Members.  They simply wish to be made whole with respect to their unpaid overtime.

Once this threshold showing is made, the claims must fit into one or more of the categories of permissible class actions described in Rule 23(b).  Under Rule 23(b)(3), Plaintiffs must show that "the questions of law or fact common to Class Members predominate over any questions affecting only individual members," and that "a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy."  *In Re Petrobras Sec. Litig.*, 862 F.3d 250, 260 (2d Cir. 2017) citing *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).

Here, the questions of law and fact are common among Class Members, and a class action is the most efficient way to resolve such a straightforward set of legal and factual issues.  Additionally, it would be cumbersome and a waste of judicial resources to bring approximately 100 similar individual overtime cases in court.  Rule 23(b)(3) identifies four matters that the Court should consider in making its requisite findings of "predominance" and "superiority": (A) the Class Members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

This case clearly involves common issues of law and fact between Named Plaintiffs and all of the members of the putative construction worker class. The proposed class action would be far superior to requiring each potential class member to file an individual lawsuit. Named Plaintiffs are not aware of any interest each individual member of the putative class would have in individually controlling his or her own action. Named Plaintiffs are not aware of any other litigation concerning this matter against Defendants. Next, this Court appears to be a perfectly acceptable forum for litigating this matter. Virtually all potential Class Members live and work (or previously lived and worked) in the New York metropolitan area. Finally, Named Plaintiffs are not aware of any difficulties in managing the proposed case as a class action. District courts in the Second Circuit routinely allow and certify hybrid wage and hour suits with opt-in FLSA collective actions alongside opt-out Rule 23 class actions. *See Briceno v. USI Servs. Group, Inc.*, 2015 U.S. Dist. LEXIS 132185, at *43 (2d Cir. Sept. 29, 2015) ) ("[I]t is routine for courts in the Second Circuit to certify state labor law classes in FLSA actions.") *citing Guzman v. VLM, Inc.*, No. 07-CV-1126, 2008 WL 597186, at *10 (E.D.N.Y. Mar. 2, 2008); see also *Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. at 204 (S.D.N.Y. June 18, 2008) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together."); *see also Damassia*, 250 F.R.D. at 164 (permitting hybrid action based on the overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 374-75 (S.D.N.Y. 2007) (rejecting defendant's contention that supplemental jurisdiction should not be exercised over NYLL claims in a simultaneous FLSA collective action and Rule 23 NYLL suit); *Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176, 179

(W.D.N.Y. 2007) ("Rule 23 and FLSA actions are routinely prosecuted together…"); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 401-02 (N.D.N.Y. 2011) (collecting cases).

Plaintiffs respectfully request that the Court order that the proposed Class Notice be sent to all proposed Class Members by first-class mail, and that Class Members be provided 30 days from the date of the mailing of the Notice to opt out in order to exclude themselves from participating in the settlement, or to file a comment or objection to the settlement. With their individual notice, each proposed member of the class will receive a closed written estimate of the amount of their settlement share to help them make an informed decision.

**B.      Preliminary Approval of the Settlement Is Appropriate**

The law favors compromise and settlement of class action suits. *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015) citing *Wal-Mart Stores*, 396 F.3d at 116 (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* Newberg § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998); *see also Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Preliminary approval, which Plaintiffs seek here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Newberg § 11.25. To grant preliminary approval, the Court

need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Dover v. British Airways, PLC*, 2018 U.S. Dist. LEXIS 92496, at *26 (E.D.N.Y. May 29, 2018); *citing In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the Court should permit notice of the settlement to be sent to Class Members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank*, 228 F.R.D. at 184. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (recognizing that courts rely on the adversary nature of a litigated wage and hour case resulting in settlement as indicia of fairness); *see also the City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. Lexis 64517 at *9 (S.D.N.Y. May 9, 2014) (string cite omitted) ("This evaluation requires the court to consider 'both the settlement terms and the negotiating process leading to settlement.'"); *see also Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574, at *15 (S.D.N.Y. May 23, 2014) (same); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (same); *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."); *see also Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

If the settlement was achieved through arm's-length negotiations between experienced counsel, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007); *see also In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotations omitted); *see also Henry*, 2014 U.S. Dist. LEXIS 72574, at *16 ("If the settlement was achieved through experienced counsels' arm's length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") *citing Massiah v. MetroPlus Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 166383, at * (string cite omitted). In general, "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.*

Preliminary approval is the first step in the settlement process. It simply allows the notice to be issued to the Class and for Class Members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input. The Plaintiffs' instant application, which is not opposed by Defendants, should be granted because proposed Class Counsel engaged in substantial investigation and a vigorous review of documents produced by Defendants which led to an arms-length negotiation between counsel.

### 1. The Settlement is Fair, Reasonable, and Adequate

As noted, in evaluating a class action settlement, courts in the Second Circuit generally consider the nine *Grinnell* factors. 495 F.2d at 463. Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," (as described in Newberg § 11.25), to determine whether the settlement falls within the range of possible final approval or "the range of reasonableness," (*id*. At § 11.26), it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### a. Further Litigation Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement before intensive litigation, contentious and time-consuming depositions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure quick and substantial recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Elisa W. City of New York*, 2016 U.S. Dist. LEXIS 107094, at *18 (S.D.N.Y. Aug. 12, 2016).

The parties have undertaken considerable time and expense in investigating the claims of Plaintiffs and the proposed Class and assessing damages calculations. Plaintiffs' counsel believes that further litigation and motion practice without settlement would necessarily result in additional expense and delay. There is monetary value in being able to obtain a relatively quick resolution of this matter. Defendants would seek to depose the Named Plaintiffs, and likely all other additional Opt-In Plaintiffs due to the highly factually sensitive analysis of independent contractor status. In addition, it is possible that Defendants would depose many third-party witnesses to

support their defense that Plaintiffs and the proposed Class did not work as many overtime hours as they allege and that some or all of the putative Class Members had their own independent established businesses, thus supporting independent contractor status.

Plaintiffs, on the other hand, would seek to depose the Defendant's principal (Defendant Maksuti) to demonstrate that Named Plaintiffs and the proposed Class were required to be paid time and one half for all work performed after 40 hours.  It is possible that expert testimony would be required to more precisely determine damages.  A complicated trial would be necessary, featuring lengthy testimony by Defendants, Plaintiffs, Class Members, and potentially experts. Preparing and presenting evidence on the factual and legal issues at trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes.  A trial to ascertain damages, even on a representative basis, could be costly and would further defer closure.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  This settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### b.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

As notice of the settlement has not yet been issued to the Class, an assessment of the Class's reaction is premature.  That said, the Named Plaintiffs support the settlement.  Although the Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt-out or object, it currently weighs in favor of preliminary approval.

### c.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require many more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement.  The

proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted). The parties' discovery here meets this standard. Class Counsel repeatedly worked with Named Plaintiffs to gather information relevant to the claims in the litigation, and obtained, reviewed, and analyzed substantial document production from Defendants to assess and calculate damages. The damages calculations were based upon depositions and paper discovery exchanged between the parties. Even after the parties reached a Class-wide settlement in principle, Class Counsel reviewed Class Members' names with Named Plaintiffs, and spoke to Named Plaintiffs so as to obtain a workable settlement agreement. As such, this factor also weighs in favor of preliminary approval.

### d. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 & 5)

Although Named Plaintiffs believe their case is strong, it is subject to risk as it relates to obtaining a large potential recovery. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). A trial on the merits would involve risk to Named Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and NYLL. While Named Plaintiffs and the proposed Class believe that they could ultimately establish Defendants' liability and their own damages, to do so would require further significant attorney fees and expenses. Furthermore, Defendants had records pertaining to the amount of time that Named Plaintiffs and the class worked on behalf of Defendants. These records establish some exposure on the part of Defendants. In addition to enduring the risk of a

trier of fact not believing their testimony, Named Plaintiffs and their fellow construction workers would also face the risk of having no documentary support to back up their claims that they worked substantial hours of overtime.  Such an argument does not assure success at trial.  Ultimately, though, the real issue (as discussed earlier and again below) was the solvency of Defendants and their ability to withstand a large judgment.  Thus, the proposed settlement alleviates these uncertainties, and thus, this factor weighs in favor of preliminary approval.

### e. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

Obtaining class certification and maintaining class status through trial is also somewhat of an issue here.  Defendants have put forth arguments as to why class certification would not be granted.  Specifically, Defendants alleged that many of the proposed Class Members did not work overtime hours and thus should not be part of the Class.  Removing the Class Members who rarely and occasionally worked overtime would leave Named Plaintiffs with a class size that could potentially be attacked as too small.  Further, establishing the total amount of overtime worked would take further litigation and motion practice, which would mean more risk, expense, and delay.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

### f. Defendants' Ability to Withstand a Greater Judgment Is at Issue (*Grinnell* Factor 7)

Defendants' ability to withstand a greater judgment is a relevant and significant concern, and is arguably the biggest factor warranting a settlement.  Defendants do not have insurance that covers the allegations raised by Named Plaintiffs and the proposed Class.  This is a relatively small construction company owned by one individual who has provided tax returns demonstrating that he has limited financial resources.  Indeed, their counsel advised that Defendants may have to

borrow funds or restructure their assets to pay any judgment materially greater than the total settlement amount proposed herein.  As such, this factor also favors preliminary approval.

> **g.  The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Plaintiffs' counsel has determined that this case presents significant risks that warrant compromise.  Defendants—as Art+1 is owned by only one person—have agreed to settle this case for $499,999.86.  The Settlement Amount represents a good value given the attendant risks of litigation even though recovery could be greater if Named Plaintiffs and the Class succeeded on all claims at trial and survived an appeal.  The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum'" *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id*. (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, each Class Member who regularly worked overtime will receive a settlement share based upon the number of years he or she worked while employed by Defendants.  Short of interviewing each Class Member who regularly worked overtime and asking them how many unpaid overtime hours per week they worked, there is no completely accurate way in which the Class's best possible recovery could be calculated.  With the assistance of Named Plaintiffs, and after reviewing all documents produced by Defendants and assessing the viability of the Class's claims and the Defendants ability to fund a larger settlement, Class Counsel is satisfied with the proposed $499,999.86 settlement.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is a tremendous result.  Accordingly, all of the *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement.  In the event that a substantial number of objectors come forward with meritorious objections, or scores of Class Members opt out, the Court may reevaluate its determination.  Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" (*Frank*, 228 F.R.D. at 184 (*quoting Giuliani*, 218 F.3d at 138-39)), the Court should grant its preliminary approval.

## 2.    The Proposed Notices Are Appropriate

The content of the Class Notice fully complies with the requirements under Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language the following: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed Class Notice here satisfies each of these requirements.  The Notice also describes the terms of the settlement, informs Class Members of how the allocation formula works, provides an estimate of each Class Member's award, informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.  The proposed Class Notice also complies with the FLSA's requirements.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010).  Accordingly, the detailed information in the proposed Class Notice is more than adequate to put Class Members on notice of the proposed

settlement and is well within the requirements of Rule 23(c)(2)(B).  Courts have approved class notices even when they provided only general information about a settlement.  *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").  The proposed Class Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

## VIII.   A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED

The Court should schedule a final fairness hearing to obtain all required information to determine that class certification is proper and the settlement should be approved.  *See Manual for Complex Litigation, Fourth* § 21.633 (2011).  The fairness hearing will provide a forum for proponents and opponents to explain, describe, or challenge the terms and conditions of the class certification and settlement, including the fairness, adequacy, and reasonableness of the settlement. Accordingly, Named Plaintiffs and the proposed Class request that the Court schedule the time, date, and place of the final fairness hearing.

## IX.   CONCLUSION

For all of the foregoing reasons, Named Plaintiffs respectfully request that the Court certify the Rule 23 settlement class, grant preliminary approval of the proposed Settlement Agreement, authorize the sending of the proposed notices of settlement to all Class Members, schedule a settlement fairness hearing, and grant final approval of the settlement of this matter, including the proposed apportionment of the settlement proceeds, after providing a reasonable opportunity for any Class Members to comment on or object to the proposed settlement.

Dated:          March ___, 2022
                New York, New York

                                **THE LAW OFFICES OF JACOB ARONAUER**

                                By:      */s/ Jacob Aronauer*
                                         Jacob Aronauer
                                         225 Broadway, 3rd Floor
                                         New York, New York 10007
                                         Ph: 212-323-6980
                                         *Attorney for Plaintiffs*